Daniel P. Struck, #012377
Nicholas D. Acedo, #021644
Ashlee B. Hesman, #028874
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
(480) 420-1600
dstruck@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com

*Attorneys for Defendant City of Eloy*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Yazmin Juárez Coyoy,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of Eloy,<br><br>　　　　　Defendant. | No. CV-19-01391-PHX-JJT (JFM)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

Immigration enforcement, and particularly the detention of immigrants, is a polarizing issue in this Country. But the political debate should not—and cannot—influence the legal question in this case: whether the City of Eloy owed a special duty of care to M.J. under Arizona's duty framework.[1]

---

[1] It is apparent from the Opposition that the gravamen of Plaintiff's Complaint is Eloy's decision to *enter into* the IGSA with ICE. (*See*, *e.g.*, Dkt. 14 at 2 [criticizing as "unseemly" Eloy receiving a "hefty annual fee" and "did essentially … nothing"]; *id*. at 2-4 [criticizing Eloy for entering into a "highly irregular contract" with ICE (a "scheme"), "choreographed" to "bypass" the federal procurement process].) She wisely does not ground her negligence claim in *that* decision, as Eloy is absolutely immune not only for its decisions to enter into the IGSA, the Modified IGSA, the Agreement, and the Amended Agreement, but for any alleged liability that inexorably flows from those decisions. *See* A.R.S. §§ 12-820.01(A)-(B) (affording public entities legislative and administrative immunity for exercising legislative and administrative functions, including the determination of fundamental governmental policy); *see also Myers v. City of Tempe*, 128 P.3d 751, 753-54, ¶¶ 10-13 (Ariz. 2006) (holding that the City of Tempe was immune for entering into an aid agreement with other municipalities, as well as from liability allegedly stemming from negligence by the participating municipality that caused the injury).

On that question, Plaintiff attempts to replace her "common sense" argument with two Restatement Sections: Restatement (Second) of Torts § 314A (duty to those in one's physical custody) and § 324A (undertaking a duty to render services). But even a cursory look at those Restatement Sections refute their application. Neither Plaintiff nor M.J. were in Eloy's custody, nor did Eloy agree to provide them with any services. Plaintiff does not cite a single case that has stretched these Restatement Sections to impose a duty in circumstances even remotely close to those alleged in the Complaint. Instead, she is asking this Court to *create* a duty out of whole cloth. It should not.

In interpreting state law, "the views of the state's highest court … are binding on the federal courts." *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). This Court "must interpret state law as it believes the Arizona Supreme Court would." *Jes Solar Co., Ltd. v. Matinee Entergy, Inc.*, CV 12-626 TUC DCB, 2015 WL 10943562, at *4 (D. Ariz. Nov. 2, 2015) (citing *Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006)). The Arizona Supreme Court has provided very recent guidance on how to determine whether a duty exists in Arizona. *See Quiroz v. Alcoa Inc.*, 416 P.3d 824, 829 (Ariz. 2018). That framework is consistent with a trend of recent Arizona cases that have *restricted* the creation of new duties against public entities,[2] and federal district court cases that have refused to find a duty where one did not already exist under Arizona law.[3] Applying that framework here, neither § 314A nor §324A imposed a duty on Eloy simply because it

---

[2] *See, e.g.*, *Guerra v. State*, 348 P.3d 423, 425-28, ¶¶ 9-27 (Ariz. 2015); *Burns v. City of Tucson*, 432 P.3d 953, 957, ¶ 15 (Ariz. App. 2018); *Stair v. Maricopa Cty*, 429 P.3d 1151, 1156-60, ¶¶ 19-34 (Ariz. App. 2018); *Hogue v. City of Phoenix*, 378 P.3d 720, 724-25, ¶¶ 13-18 (Ariz. App. 2016); *Acri v. State*, 394 P.3d 660, 663-66, ¶¶ 8-22 (Ariz. App. 2017); *Lorenz v. State*, 364 P.3d 475, 477-78 ¶¶ 12-20 (Ariz. App. 2015); *Boisson v. Arizona Bd. of Regents*, 343 P.3d 931, 934-38, ¶¶ 8-21 (Ariz. App. 2015).

[3] *See, e.g.*, *Krieg v. Schwartz*, No. CV-13-00710-PHX-DLR, 2015 WL 12669893, at *7-8 (D. Ariz. Aug. 19, 2015); *Nelson v. Bank of America*, No. CV 11-1117-PHX-SRB, 2012 WL 12870250, at *4-5 (D. Ariz. Jan. 17, 2012); *Stern v. Charles Schwab & Co., Inc.*, No. CV-09-1229-PHX-DGC, 2010 WL 1250732, at *2-3 (D. Ariz. Mar. 24, 2010); *Mendoza-Gauna v. Corr. Corp. of America*, No. CV 03-0876-PHX-EHC-MEA, 2007 WL 9724720, at *2 (D. Ariz. Feb. 23, 2007); *Keams v. Tempe Technical Institute, Inc.*, 993 F. Supp. 714, 720-21 (D. Ariz. 1997).

accelerated the agreement between ICE and CoreCivic to detain immigrants at the South Texas Residential Family Center in Dilley, Texas.

**I.    ELOY DID NOT OWE A DUTY OF CARE.**

Plaintiff's duty theory is grounded solely in a special relationship arising either out of contract (§ 324A) or the common law (§ 314A).  She does not argue that public policy imposes a duty, nor does she go through the public-policy analysis.  *See Quiroz*, 416 P.3d at 830, ¶ 17 (holding that a duty based on public policy must satisfy the *Bloxham* factors); *see also Bloxham v. Glock Inc.*, 53 P.3d 196, 200-01, ¶¶ 9-12 (Ariz. App. 2002) (setting forth public-policy factors).  Therefore, she has waived any other duty basis.  *See Guerra*, 348 P.3d at 428, ¶ 25 (refusing to address duty theories not raised by the plaintiff).

**A.    Section 324A Does Not Apply.**

Section 324A provides:

> One who undertakes, gratuitously or for consideration, *to render services* to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965) (emphasis added).  Plaintiff argues that Eloy is "the quintessential actor covered by § 324A" because it "undertook to render and supervise the rendition of services" required by the IGSA. (Dkt. 14 at 8:4-5.)  However, she does not identify which Subsection—(a), (b), or (c)—she relies on.[4]  That in itself is a failure to establish a duty of care, a burden which she bears.

---

[4] Subsection (a) is incompatible with Arizona law because it turns on the foreseeability of harm.  *See Quiroz*, 416 P.3d at 828, ¶ 8.

3

Nonetheless, § 324A supports the existence of a duty only if the defendant agreed to perform a service. *See*, *e.g.*, *Stanley v. McCarver*, 92 P.3d 849, 854, ¶ 15 (Ariz. 2004) (defendant-doctor undertook to read plaintiff's x-ray and render an opinion); *Papastathis v. Beall*, 723 P.2d 97, 100 (Ariz. App. 1986) (defendant agreed to inspect, endorse, and recommend faulty dispenser rack). Arizona courts have consistently held, however, that § 324A does *not* apply if the defendant never actually agreed to perform a service.[5] Although Plaintiff states many times in her Opposition that Eloy agreed to retain supervisory responsibility for the operation of the facility,[6] the contractual documents—which Plaintiff tacitly agrees can be considered in conjunction with Eloy's Motion to Dismiss—belie that suggestion and control the inquiry. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."); *Gbelia v. Nationstar Mortgage LLC*, CV-15-01799-PHX-DLR, 2016 WL 1072482, at *4 (D. Ariz. Mar. 18, 2016) (rejecting complaint allegations that were contradicted by documents properly subject to judicial notice); *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 776 (D. Ariz. 2012) (rejecting complaint allegations that were contradicted by exhibits attached to the complaint).

As discussed at length in Eloy's Motion, nothing in the IGSA or Modified IGSA required Eloy to perform any service, nor did Eloy undertake to perform any service. (*See*

---

[5] *See*, *e.g.*, *Holcomb v. Am. Valet Med. Transp. LLC*, No. 1 CA-CV 16-0406, 2018 WL 1630689, at *3, ¶ 14 (Ariz. App. Apr. 5, 2018), *review denied* (Oct. 30, 2018); *Koss Corp. v. Am. Exp. Co.*, 309 P.3d 898, 917, ¶ 66 n.29 (Ariz. App. 2013); *Wickham v. Hopkins*, 250 P.3d 245, 250, ¶ 21 (Ariz. App. 2011); *Luce v. State Title Agency, Inc.*, 950 P.2d 159, 163 (Ariz. App. 1997); *Tollenaar v. Chino Valley Sch. Dist.*, 945 P.2d 1310, 1312 (Ariz. App. 1997); *Easter v. Percy*, 810 P.2d 1053, 1056 (Ariz. App. 1991); *Daggett v. Cty. of Maricopa*, 770 P.2d 384, 390 (Ariz. App. 1989).

[6] *See*, *e.g.*, Dkt. 14 at 2:19-21 ["Eloy contracted to protect and care for the vulnerable families and children involuntarily confined in its facility."]; *id*. at 2:26 [Eloy "agreed to house and protect" detainees]; *id*. at 3:25-26 [Eloy and ICE modified the IGSA "to make Eloy responsible for the construction and operation of the new Dilley detention facility"]; *id*. at 4:10 [the IGSA "explicitly imposed responsibility on Eloy for the supervision of the Dilley facility"]; *id*. at 7:1-2 ["Eloy promised in writing to provide for "the day-to-day operation of the Facility"]; *id*. at 8:21-22 ["Eloy had the contractual obligation and authority to ensure that the Dilley facility met these standards."].

Dkt. 11 at 2, Section I.A, citing Exhibit 1; *id*. at 4-7, Section I.C, citing Exhibit 5.) All services were to be performed either by ICE (provision of healthcare) or the Service Provider (operations). (*Id*.) CoreCivic, not Eloy, was the Service Provider and "responsible for the day-to-day operation of the facility." (Dkt. 11, Section I.B, citing Exhibit 3, § 3 & Exhibit 4 at 14; *id*. at 8, Section I.E, citing Exhibit 8, § 3 & Exhibit 5 at 1; Dkt. 11-3 at 33, App'x A, § I.) And ICE, not Eloy, was responsible for ensuring that CoreCivic complied with the IGSA. (Dkt. 11, Section I.C.4, citing Exhibit 5.4, App'x A, §§ 1, 4, 5, 7.)

In the Complaint (at ¶ 40) and again in the Opposition (at 4:13), Plaintiff inserts "[Eloy]" after the words "Service Provider" when quoting the Modified IGSA's Quality Assurance Surveillance Plan to suggest that Eloy was the Service Provider. But the IGSA itself does not identify Eloy as the "Service Provider." (Dkt. 11-3 at 33.) Eloy is the "Contractor" or "Offeror." (Dkt. 11-3 at 2-8.) The Service Provider is the "entity, which provides the services described in" the Performance Work Statement. (*Id*., at 10, § 3.) And CoreCivic is responsible for "provid[ing] services in compliance with the applicable terms of the IGA." (Dkt. 11-6 at 9, § 3.)

Citing page 1 of the Performance Work Statement, Plaintiff also asserts that the Modified IGSA identifies "*Eloy* as the 'Service Provider/Contractor,'" and "obligated Eloy to provide services directly 'to alien family groups who have been approved for such services by ICE." (Dkt. 14 at 8:9-15, emphasis in original.) But nothing in the Performance Work Statement designated Eloy as the "Service Provider/Contractor" or the "Service Contractor." And it states only that the "*project goal* is the provision of a State-licensed residential care center that provides other related services twenty-four (24) hours per day, seven (7) days per week, to alien family groups who have been approved for such services by ICE," and further states that it is the responsibility of the "Service Provider" to "seek licensing from the State agency." (Dkt. 11-3 at 10.) Nothing in the IGSA, the Modified IGSA, the Agreement, or the Amended Agreement reflects an undertaking by

5

Eloy to perform any services at the South Texas Family Residential Center. Therefore, § 324A cannot impose a duty of care on Eloy.

### B. Section 314A Does Not Apply.

Section 314A(4) provides:

> One who is required by law to take or who voluntarily *takes the custody of another* under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other [to protect them against unreasonable risk of physical harm].

Restatement (Second) of Torts § 314A(4) (1965) (emphasis added). As an initial matter, § 314A(4) expressly turns on the foreseeability of harm ("unreasonable risk of harm"), which is inconsistent with Arizona law and therefore cannot be relied on to support a duty of care. *See Quiroz*, 416 P.3d at 828, ¶ 8 ("A duty based on foreseeability exists when a defendant realizes or should realize that his conduct creates an unreasonable risk of harm to a foreseeable plaintiff.") (internal quotation marks and citation omitted); *id*. at 834, ¶ 41 (rejecting Restatement Sections that rely on foreseeability because they are inconsistent with current Arizona law); *Gipson v. Kasey*, 150 P.3d 228, 231, ¶ 15 (Ariz. 2007) ("[F]oreseeability is not a factor to be considered by courts when making determinations of duty, and we reject any contrary suggestion in prior opinions.").

Moreover, as the plain language of § 314A and the cases Plaintiff cites confirm, this Section applies only when defendant has physical custody of the plaintiff. *See Fleming v. State Dep't of Pub. Safety*, 352 P.3d 446, 447, ¶ 3 (Ariz. 2015) (police officer arrested suspect and placed her in back seat of his patrol car); *Calnimptewa v. Flagstaff Police Dept.*, 30 P.3d 634, 635, ¶¶ 3-4 (Ariz. App. 2001) (same). It does not apply if the plaintiff was not in the defendant's physical custody. *See Vasquez v. State*, 206 P.3d 753, 761, ¶ 26 (Ariz. App. 2008) (holding § 314A(4) inapplicable where suspect "never was apprehended or taken into custody); *see also Rollins v. Wackenhut Services, Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) (holding that § 314A did not impose duty of care on private company contracted to provide security for federal government, where private company did not have physical custody of plaintiff).

6

It is undisputed that Eloy never had physical custody of Plaintiff or M.J. They were in the legal custody of ICE and detained at the South Texas Family Residential Center, which is owned and operated by CoreCivic. Although Plaintiff relies on § 314A, she does not point to any plausible allegation that supports this theory, nor does she make any affirmative argument in her Opposition. (Dkt. 14 at 8:23-9:16.) Citing *Coffey v. United States*, 870 F. Supp. 2d 1202 (D.N.M. 2012), Plaintiff asserts that "[c]ourts in other jurisdictions have likewise relied on § 314A to find a duty of care … in circumstances similar to those at issue here." (*Id*. at 9:12-17.) *Coffey* is inapposite for two reasons. First, unlike Arizona, New Mexico allows foreseeability into the duty equation. *Coffey*, 870 F. Supp. 2d at 1225. Second, the district court in *Coffey* imposed a duty on the Bureau of Indian Affairs ("BIA") because it retained legal custody of the decedent even though he was detained at a county-owned facility pursuant to a contract between the BIA and the county. *Id*. at 1210, 1238. Eloy did not have legal custody of Plaintiff or M.J. They were always in the legal custody of the federal government. (Dkt. 1, ¶¶ 6, 10.) Therefore, § 314A cannot impose a duty of care on Eloy.[7]

## II. PLAINTIFF'S NEGLIGENT-TRAINING CLAIM IS BARRED FOR FAILURE TO COMPLY WITH A.R.S. § 12-821.01 AND FAILURE TO STATE A CLAIM.

### A. Plaintiff's Notice of Claim Was Deficient.

Plaintiff concedes that her Notice of Claim did not discuss negligent training in specific terms. But, citing *Mitchell v. City of Flagstaff*, CV 11-8140-PCT-FJM, 2011 WL 5826014 (D. Ariz. Nov. 18, 2011), and *Fuciarelli v. Good*, CV-14-01078-PHX-GMS, 2015 WL 363941 (D. Ariz. Jan. 27, 2015), she argues that allegations in a notice of claim are sufficient if it allows the public entity "to anticipate the claim." (Dkt. 14 at 12-14.) Those cases are distinguishable. In *Mitchell* and *Fuciarelli*, the Cities of Flagstaff and

---

[7] Section II.E in Plaintiff's Opposition argues that any duty of care is non-delegable. (Dkt. 14 at 9-11.) Because that argument assumes a duty exists and, as just discussed, Eloy did not have a duty, this argument is moot. *Rios v. Niagara Mach. & Tool Works*, 299 N.E.2d 86, 93 (Ill. App. 1973), *aff'd*, 319 N.E.2d 232 (Ill. 1974). Eloy preserves its challenge to Plaintiff's non-delegable argument, if necessary, for a future dispositive motion.

1  Scottsdale were sued, along with their police officer-employees, for injuries that the police
2  officers had allegedly caused. *Mitchell*, 2011 WL 5826014, at *3; *Fuciarelli*, 2015 WL
3  363941, at *2. The notices provided a detailed account of the employees' allegedly
4  negligent conduct. *Id*. Thus, it reasonably put the Cities on notice that their employees'
5  alleged negligence was attributed to them, not only vicariously but also directly for lack of
6  training or supervision. *Id*.

7  In this case, Plaintiff did not sue any Eloy employee, nor did the Notice of Claim
8  attribute any fault or conduct to a specific Eloy employee. (Dkt. 11-6 at 17-26.)
9  Although the Notice did say that Eloy "had a duty to prevent its employees or independent
10 contractors from causing physical harm to a third party" (*id*. at 25), that is a legal
11 conclusion. There are no allegations in the Notice that suggest, much less support, a claim
12 against any Eloy employee on which to predicate either vicarious liability or direct
13 liability (negligent training or supervision). Moreover, that assertion is made under a
14 heading that *narrowed* the legal theory to "Negligent Supervision." (*Id*.) Thus, Plaintiff
15 expressly limited any cause of action to that claim. Permitting Plaintiff to expand her
16 claim after-the-fact frustrates the purpose of the notice-of-claim statute: "to allow the
17 public entity to investigate and assess liability, to permit the possibility of settlement prior
18 to litigation, and to assist the public entity in financial planning and budgeting." *Falcon*
19 *ex rel. Sandoval v. Maricopa Cty.*, 144 P.3d 1254, 1256, ¶ 9 (Ariz. 2006) (citation
20 omitted). A public entity cannot assess liability or consider settlement if a claimant is
21 playing a shell game and holding allegations back. Plaintiff's negligent-training claim
22 should be barred as a matter of law.

23 **B.  Plaintiff's Complaint Fails to State a Negligent-Training Claim.**

24 Here, again, Plaintiff does not point to any allegation in the Complaint explaining
25 who Eloy failed to train, what training they did not receive, or how the deficient training
26 caused M.J.'s death. Instead, she points to general allegations that Eloy had a duty to
27 supervise the facility, failed to ensure safe and sanitary conditions and adequate medical
28

care, and caused M.J.'s death. (Dkt. 14 at 14:9-15:5.) She argues that these general allegations "necessarily impl[y] that Eloy provided no training." (*Id.* at 14:28-15:1.)

But facts that are "merely consistent with a defendant's liability" are not good enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Neither are implications. *See McKnight v. Seattle Office of Civil Rights*, 317CV00015RCJWGC, 2018 WL 1524439, at *2 (D. Nev. Mar. 27, 2018) ("[A] plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly–Iqbal* review).") Nothing in Plaintiff's Complaint allows the Court to draw the reasonable inference that Eloy negligently trained its employees. The Complaint, which Plaintiff stands by, fails to plausibly allege a valid negligent-training claim.

## CONCLUSION

For these additional reasons, the Court should dismiss all claims because Plaintiff has failed to establish that Eloy had a duty of care. The Court should also dismiss Plaintiff's negligent-training claim because it was not raised in the Notice-of-Claim and otherwise lacks adequate factual allegations in the Complaint.

DATED this 20th day of May, 2019.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/ Nicholas D. Acedo
Daniel P. Struck
Nicholas D. Acedo
Ashlee B. Hesman
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*Attorneys for Defendant City of Eloy*

3578193

9

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>David B. Rosenbaum
>Hayleigh S. Crawford
>OSBORN MALEDON, P.A.
>2929 North Central Avenue, 21st Floor
>Phoenix, Arizona 85012-2793
>drosenbaum@omlaw.com
>hcrawford@omlaw.com

>R. Stanton Jones, Admitted pro hac vice
>Robert N. Weiner, Admitted pro hac vice
>Sally L. Pei, Admitted pro hac vice
>Daniel F. Jacobson, Admitted pro hac vice
>ARNOLD & PORTER KAYE SCHOLER LLP
>601 Massachusetts Ave. NW
>Washington, DC 20001
>stanton.jones@arnoldporter.com
>robert.weiner@arnoldporter.com
>sally.pei@arnoldporter.com
>daniel.jacobson@arnoldporter.com

*Attorneys for Plaintiff*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is **not** a registered participant of the CM/ECF System:

>N/A

>/s/ Nicholas D. Acedo